UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

C. SIDNEY JOHNSTON, INDIVIDUALLY, AND
DANETTE JOHNSTON, INDIVIDUALLY,

   Plaintiffs,

v.                                                No. 4:20-cv-0424-P

CHAR-BROIL, LLC, FERRELLGAS, INC.,
AND BLUE RHINO CORPORATION,

   Defendants.

### MEMORANDUM OPINION & ORDER

This products liability and negligence case centers on injuries sustained by Plaintiff C. Sidney Johnston when gas escaped from a propane tank valve and ignited and burned him. Mr. Johnston and his wife, Danette ("Mrs. Johnston" and collectively, "Plaintiffs") sued Defendant Ferrellgas Inc., claiming his injuries resulted from a defective tank valve and Ferrellgas's negligence.

After a three-day trial, the jury returned a verdict finding Ferrellgas 93% at fault and Mr. Johnston 7% at fault. The jury thus awarded Mr. Johnston $7,000,000 in damages for past and future physical pain, mental anguish, disfigurement, and impairment. The jury also awarded Mrs. Johnston $500,000 for past and future loss of consortium.

After this verdict, Ferrellgas timely filed a Rule 50(b) Renewed Motion for Judgment as a Matter of Law ("JMOL"), Motion for New Trial, and Motion for Remittitur. ECF No. 124. The Court will address each motion in turn.

*First*, having considered the arguments of counsel and applicable law, the Court **DENIES** the Motion for JMOL.

*Second*, the Court conditionally **DENIES** the Motion for New Trial, **GRANTS** the Motion for Remittitur, and **REMITS** the damages awarded to Mr. Johnston from $7,000,000 to $1,700,000.

*Finally*, the Court **ORDERS** Plaintiffs to state in writing whether they accept the Court's remittitur within **10 days** of the date of this Order. If Plaintiffs agree to and accept the remitted damages, the Court will deny the Motion for New Trial without condition. But if Plaintiffs fail to accept the Court's remittitur by action or inaction, the Court will grant Ferrellgas's Motion for New Trial based on its objection that the jury's award was excessive as a matter of law. In the potential new trial to determine the appropriate amount of damages, the Court will not reconsider attorneys' fees or allow a new jury to consider evidence outside the scope of evidence already presented to the Court in the original trial.

## BACKGROUND

This case involves a flash fireball emitted from a propane tank that resulted in burn injuries to Mr. Johnston. Plaintiffs brought claims for negligence and products liability. They alleged a defective face seal on the valve of one of Ferrellgas's[1] propane tanks led to a high-pressure leak that ignited when Mr. Johnston tried to use the tank with his grill. Mr. Johnston suffered burns and nerve injuries, especially on his hands and arms.

On November 15, 2021, this case was called for a jury trial. Plaintiffs appeared in person and through their counsel. Ferrellgas appeared through a company representative and through counsel. Following a three-day trial, the jury found Ferrellgas 93% liable under two theories: products liability and negligence. In total, the jury awarded Plaintiffs $7.5 million in damages.[2] Ferrellgas's Motions attack the apportionment of liability and the amount of damages awarded.

---

[1] Ferrellgas is a national corporation that refills, maintains, and distributes propane tanks. Former defendants Char-broil, LLC and Blue Rhino Corporation were dismissed from this lawsuit before the jury trial.

[2] As Ferrellgas notes in its Motion, this amount does not account for the reduction based on Mr. Johnston's 7% share of responsibility attributed to him by the jury. ECF No. 124 at 1 n.1.

# RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

### A. Legal Standard

Under Rule 50, a party may move for JMOL at any time before a case is submitted to the jury. FED. R. CIV. P. 50(a)(2). A court should grant JMOL if a reasonable jury had no "legally sufficient evidentiary basis to find for the party on" an issue fully heard. *Id.* 50(a)(1); *see also OneBeacon Ins. Co. v. T. Wade Welch & Assocs.*, 841 F.3d 669, 675 (5th Cir. 2016) ("A litigant cannot obtain [JMOL] unless the facts and inferences point 'so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion.'") (citations omitted).

"If the court does not grant a motion for [JMOL] made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion." FED. R. CIV. P. 50(b). A party may then renew the motion under Rule 50(b). Any argument made in a renewed motion for JMOL under Rule 50(b) must have been previously made in a motion for JMOL under Rule 50(a). *OneBeacon Ins. Co.*, 841 F.3d at 676 (citing *Unitherm Food Sys., Inc. v. Swift–Eckrich, Inc.*, 546 U.S. 394, 398 n.1 (2006)).

At this stage, a court's "review of a jury's verdict is 'especially deferential.'" *OneBeacon Ins. Co.*, 841 F.3d at 675 (quoting *SMI Owen Steel Co. v. Marsh U.S.A., Inc.*, 520 F.3d 432, 437 (5th Cir. 2008)). "[I]t is the function of the jury as the traditional finder of the facts, and not for the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses." *Roman v. W. Mfg., Inc.*, 691 F.3d 686, 692 (5th Cir. 2012) (quoting *Mosley v. Excel Corp.*, 109 F.3d 1006, 1009 (5th Cir. 1997)). Courts thus "draw all reasonable inferences in the light most favorable to the verdict and cannot substitute other inferences that [they may find] more reasonable." *Westlake Petrochems., LLC v. United Polychem, Inc.*, 688 F.3d 232, 239 (5th Cir. 2012).

### B. Plaintiffs argue this Rule 50(b) Motion includes issues that Ferrellgas failed to raise in its initial Rule 50(a) motion.

The Court first addresses Plaintiffs' preliminary argument that Ferrellgas waived its arguments by not preserving them in its Rule 50(a) motion. ECF No. 128 at 2–3. Plaintiffs contend that in the "Rule 50(a)

3

motion filed at the close of evidence, Ferrellgas raised only two issues: (1) whether the defect existed when the product left Ferrellgas's possession; and (2) whether Ferrellgas failed to exercise reasonable care." *Id.* (citing ECF No. 102 at 1–3). Plaintiffs argue the Court should construe Rule 50 narrowly and consider only these two precise issues raised in the initial Ruel 50(a) motion. This would result in the Court finding that Ferrellgas waived several issues in its renewed post-verdict Rule 50(b) motion. These issues would include: "(1) the existence of a defect; (2) whether the accident could have occurred even with a functioning face seal; [and] (3) whether the accident itself caused any defect[.]" *Id.* (citing ECF No. 124 at 1–14).

"[T]he two basic purposes of [Rule 50] are 'to enable the trial court to re-examine the question of evidentiary insufficiency as a matter of law if the jury returns a verdict contrary to the movant[] and to alert the opposing party to the insufficiency before the case is submitted to the jury.'" *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 288 (5th Cir. 2007) (quoting *MacArthur v. Univ. of Tex. Health Ctr.*, 45 F.3d 890, 897 (5th Cir. 1995)) (citation omitted). This is especially true considering the Fifth Circuit's practice of liberally construing this rule. *See id.* (quoting *Scot. Heritable Tr., PLC v. Peat Marwick Main & Co.*, 81 F.3d 606, 610 (5th Cir. 1996)) ("Rule 50(b) is construed liberally and [courts] may excuse 'technical noncompliance' when the purposes of the rule are accomplished.").

This purpose is, however, balanced in preventing "a litigant from ambushing both the district court and opposing counsel after trial" with new theories. *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 290 (5th Cir. 2019) (citation omitted). "By requiring a litigant to raise all arguments in its initial Rule 50(a) motion, the trial court is able to 're-examine the question of evidentiary insufficiency as a matter of law if the jury returns a verdict contrary to the movant[.]'" *Id.* at 291 (quoting *Scot. Heritable Tr.*, 81 F.3d at 610. This also alerts opposing counsel "to any 'insufficiency before the case is submitted to the jury,' giving the opposing party a chance to cure any defects in its legal theories or proof should the motion have merit." *Id.* (quoting same).

The Court concludes that Ferrellgas's initial Rule 50(a) motion provided sufficient notice to the Court and Plaintiffs that Ferrellgas was

4

challenging the defect in the face seal of the propane tank. This is not a case where Plaintiffs were ambushed by a new issue not contemplated in the initial motion. Rather, under the Fifth Circuit's construction, these three issues are more fully fleshed-out articulations of the challenges raised in the Rule 50(a) motion.

But just because the challenges are preserved for the renewed motion does not mean they prevail. For the jury to find a defect existed on the tank's face seal when it left Ferrellgas's possession, they would have had to implicitly reject all three contentions Ferrellgas makes in its renewed motion. In reaching its verdict, the jury would have necessarily found: (1) there was a defect; (2) even if the accident *could* have happened without a defect, it probably happened because of a defect; and (3) the accident could not have caused the defect if it existed when the tank left Ferrellgas's possession. As detailed below, the Court concludes there was sufficient evidence to support the jury's finding on the products liability cause of action—including the element that a defect existed when the tank left Ferrellgas's possession. Thus, none of these issues entitle Ferrellgas to JMOL.

## C. Products Liability Cause of Action

Ferrellgas argues in general that Plaintiffs failed to carry their burden of proving that a defect existed when the propane tank left Ferrellgas's possession. First, Ferrellgas contends that "the experts' conclusions are speculative because those opinions do not rule out other possible alternatives in a non-conclusory fashion." ECF No. 124 at 5. It also argues that the "expert opinions are conclusory because the only basis offered in support does not actually support those opinions." *Id.* Second, it asserts that Plaintiffs "failed to show what the 'defect' was." *Id.* at 10. The Court addresses these two arguments below and concludes they are without merit.

1. <u>Ferrellgas argues Plaintiffs failed to prove the tank was defective when it left its possession because their expert opinions were speculative and conclusory.</u>

Ferrellgas contends that the jury's finding that the tank had a defect was speculative because "the only 'evidence' underpinning the finding are the speculative causation opinions of two experts—James Petersen

5

and Scott Buske." *Id.* Several theories underlie this assertion, namely that the experts failed to: (1) rule out that the accident could have occurred even with a functioning face seal or (2) show the defect caused the accident rather than the accident causing the defect. *Id.* at 6–9.

Ferrellgas also claims the testimony was conclusory because the Plaintiffs' expert opinions were based on post-accident analysis and failed to prove the face seal's condition before the accident. *Id.* at 9. Thus, Ferrellgas argues that the basis for Plaintiffs' "experts' opinions—that the face seal was defective before the accident—do[es] not actually support those opinions, given the distinct possibility that the fire itself created the damage to the face seal." *Id.*

In response, Plaintiffs argue that sufficient evidence allowed "the jury to infer that the defect existed in the seal when it left Ferrellgas's facility." ECF No. 128 at 3. Namely, the jury heard evidence that a defect existed in the tank and that the tank was sealed when it left Ferrellgas's custody. *Id.* Specifically, Plaintiffs contend that they proffered sufficient expert testimony and circumstantial evidence to show: (1) there was a defect in the seal; (2) the seal was covered by a blue cap when it left the facility immediately after being inspected; and (3) more probably than not, the seal remained in the same condition under that blue cap until Mr. Johnston opened it just before the accident. *Id.* at 3, 6 (citations omitted). They also claim the evidence shows Ferrellgas examined only a portion of the seal. *Id.* Plaintiffs posit that this expert testimony and "[c]ircumstantial evidence is sufficient to prove that a product was defective when it left the hands of the manufacturer." *Id.* at 5–6 (citing *Shaun T. Mian Corp. v. Hewlett-Packard Co.*, 237 S.W.3d 851, 858 (Tex. App.—Dallas 2007, writ denied)). Thus, they argue the jury was free to infer from this circumstantial evidence that the tank was defective when it left Ferrellgas's possession. *See id.* (citing *Darryl v. Ford Motor Co.*, 440 S.W.2d 630, 632 (Tex. 1969) and *McKisson v. Sales Affiliates, Inc.*, 416 S.W.2d 787, 792 (Tex. 1967)).

Plaintiffs further claim "[c]ircumstantial evidence is sufficient to prove that a product was defective when it left the hands of the manufacturer." *Id.* at 5 (citing *Shaun T. Mian Corp.*, 237 S.W.3d at 858). Plaintiffs also assert that in products liability cases, circumstantial evidence is "often necessary because 'a product consumer or user is not

6

in a position to know the manufacturing process or how a defect might have occurred.'" *Id.* (quoting same) (citations omitted). They argue it would be "difficult, if not impossible, . . . to rebut by direct evidence all of the conceivable possibilities which would account for the defective condition other than the existence of the defect at the time of the sale." *Id.* (quoting *Darryl*, 440 S.W.2d at 632).

The Court evaluates evidence adduced at trial in the light most favorable to the nonmovants—here, Plaintiffs. *See X Techs., Inc. v. Marvin Test Sys., Inc.*, 719 F.3d 406, 411 (5th Cir. 2013). The Court concludes there was sufficient expert testimony and circumstantial evidence to permit the jury to infer that a defect existed in the face seal when the tank left Ferrellgas's possession. The Court rejects Ferrellgas's characterization of the expert testimony as speculative and conclusory. Instead, the Court concludes that sufficient testimony with an adequate basis supported the jury's findings. The Court accordingly rejects this ground of the Motion for JMOL.

2. <u>Ferrellgas contends Plaintiffs failed to show what the defect was.</u>

Ferrellgas next claims that Plaintiffs "offered no evidence identifying exactly what 'defect' they believed existed." ECF No. 124 at 10. Instead, Ferrellgas contends, Plaintiffs merely "offered expert testimony opining that the face seal failed." *Id.* Ferrellgas argues that this "at most, 'may support a finding of product failure, but it is not sufficient evidence of a defect in the manufacturing process.'" *Id.* (quoting *Casey v. Toyota Motor Eng'g & Mfg. N. Am., Inc.*, 770 F.3d 322, 326 (5th Cir. 2014)).

Plaintiffs respond that the experts were unanimous: "there was a leak in the seal, and this leak was a defect." ECF No. 128 at 4. As stated above, this expert testimony and circumstantial evidence sufficiently support the finding that a defect existed.

Again, the evidence adduced at trial must be viewed in the light most favorable to the nonmovants. *X Techs., Inc.*, 719 F.3d at 411. the Court concludes that Plaintiffs proffered sufficient evidence for a reasonable jury to infer that the face seal had a leak and was thus defective when it left Ferrellgas's possession. The Court thus rejects this ground for JMOL.

7

**D. Negligence Cause of Action**

Ferrellgas next contends that Plaintiffs did not establish that Ferrellgas failed to exercise reasonable care and that their negligence claim accordingly fails. ECF No. 124 at 13. Ferrellgas argues Plaintiffs had to show that it "[1] did something that an ordinarily prudent person exercising ordinary care would not have done under those circumstances, or [2] . . . [it] failed to do that which an ordinarily prudent person would have done in the exercise of ordinary care." *Id.* (citing *JPMorgan Chase Bank, N.A. v. Prof'l Pharmacy II*, 508 S.W.3d 391, 423–24 (Tex. App.—Fort Worth 2014, no pet.)). Ferrellgas claims it "complied with industry regulations and standards by visually inspecting the seal" but admits "compliance with industry code is not dispositive (although persuasive)." *Id.* Further, Ferrellgas undermines the testimony of Plaintiffs' expert, claiming it cannot prove that Ferrellgas breached a duty. *Id.* at 14.

Plaintiffs respond by arguing that Ferrellgas failed to adequately comply with the industry standard for inspecting the face seal. The relevant code provision[3] requires that before filling the cylinder, the face seal "shall be examined for defects." ECF No. 128 at 8. At trial, Ferrellgas's plant manager, Mr. Magrath, admitted that the term "visual inspection" was open to interpretation. *See* ECF No. 114 at 50:17–25. Plaintiffs argue a reasonable jury could find that Ferrellgas fell short of this requirement because its employees "visually inspect the seal while it is inside of the tank, so that they are only able to see the outer edge of the seal." That is, they visually inspected "a very small part of the seal." ECF No. 128 at 8 (citation omitted). Thus, Plaintiffs posit it is "within the province of the jury to determine whether [Ferrellgas]'s partial visual inspection of the face seal complied with NFPA 58, and in turn how that bears on [Ferrellgas]'s liability." *Id.*

Plaintiffs also argue the jury could have independently found Ferrellgas breached a duty by not having internal policies regulating the maximum lifespan of a seal or replacing old seals. *Id.* at 9. Instead, Plaintiffs frame Ferrellgas's policy to be replacing old seals only after they fail, thus "ensuring that the seal[s] will become defective before

---

[3]National Fire Protection Association No. 58 ("NFPA 58").

8

[they are] replaced." *Id.* Thus, Plaintiffs contend reasonable jurors could conclude Ferrellgas "failed to exercise reasonable care because [its] partial visual inspection was insufficient to reveal the defect, and [Ferrellgas lacked] adequate rules regarding replacement of the seals." *Id.* at 10.

The Court concludes a reasonable jury could have found Ferrellgas breached its duty of care under either theory raised by Plaintiffs. As Ferrellgas admits, merely complying with NFPA 58 is not dispositive as to whether it met its duty of care. *See* ECF No. 124 at 13–14. Rather, it was for the jury to determine whether Ferrellgas adequately inspected the seal. Further, a reasonable jury could independently find Ferrellgas breached its duty based on its policy of having no maximum lifespan for face seals and no policy for replacing old seals unless a defect was detected. The Court concludes both theories were supported by adequate evidence and testimony (including from Ferrellgas's plant manager) to support the jury's finding on the element of breach. The Court thus rejects this ground of Ferrellgas's Motion for JMOL.

Having rejected all the grounds Ferrellgas raises for judgment as a matter of law, the Court **DENIES** the Motion for JMOL.

## MOTION FOR NEW TRIAL

Ferrellgas alternatively moves the Court to order a new trial based on several theories: (1) Plaintiffs' counsel engaged in improper jury argument, resulting in an excessive jury award; (2) the jury charge improperly commingled valid and invalid theories of recovery; and (3) the jury's apportionment of fault was contrary to the great weight of the evidence.

**A. Legal Standard**

"In an action based on state law but tried in federal court by reason of diversity of citizenship," like this case, "a district court must apply a new trial or remittitur standard according to the state's law controlling awards for excessiveness or inadequacy." *Foradori v. Harris*, 523 F.3d 477, 497 (5th Cir. 2008) (citing *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 426 (1996)). Under Texas Rule of Civil Procedure 320, "[n]ew trials may be granted and judgment set aside for good cause, on motion or on the court's own motion on such terms as the court shall

9

direct," and "[n]ew trials may be granted when the damages are manifestly too small or too large." TEX. R. CIV. P. 320.

District court judges have wide discretion to grant or deny a motion for new trial or remittitur; that exercise of discretion can be set aside only upon a clear showing of abuse. *Eiland v. Westinghouse Elec. Corp.*, 58 F.3d 176, 183 (5th Cir. 1995). As detailed below, the Court concludes that the jury's award was excessive based on the evidence at trial. Accordingly, either a new trial is needed on the issue of damages, or a remittitur of those excessive damages is necessary.

**B. Ferrellgas's Motion for New Trial**

Federal Rule of Civil Procedure 59 allows a district court to order a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a)(1)(A). The Fifth Circuit has interpreted this rule to mean a new trial is appropriate where: (1) the verdict is against the great weight of the evidence; (2) the amount of damages awarded is excessive; or (3) the trial was unfair or marred by prejudicial error. *Parra v. Interstate Express, Inc.*, 501 F. Supp. 3d 430, 434 (N.D. Tex. 2020) (Pittman, J.), *aff'd,* No. 20-11230, 2022 WL 421411 (5th Cir. Feb. 11, 2022) (citing *Seidman v. Am. Airlines, Inc.*, 923 F.2d 1134, 1140 (5th Cir. 1991)). The Fifth Circuit has cautioned that "new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great—not merely the greater—weight of the evidence." *Id.* (quoting *Conway v. Chem. Leaman Tank Lines, Inc.*, 610 F.2d 360, 363 (5th Cir. 1980)) (citation omitted). Each of Ferrellgas's proffered arguments in support of its request for a new trial are addressed below.

1. <u>Plaintiffs' counsel's closing argument did not irreparably prejudice the jury's verdict.</u>

Ferrellgas first claims Plaintiffs' counsel engaged in improper closing argument that poisoned the jury's verdict. A motion for new trial premised on counsel's improper arguments should be granted only when an "improper closing argument irreparably prejudice[d] a jury verdict." *Parra*, 501 F. Supp. 3d at 436 (quoting *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 509 (5th Cir. 2012)). "To justify a reversal based on improper comments of counsel, the conduct must be such as to gravely

10

impair the calm and dispassionate consideration of the case by the jury." *Id.* (quoting *Dixon v. Int'l Harvester Co.*, 754 F.2d 573, 585–86 (5th Cir. 1985)) (citation omitted). The Fifth Circuit has recognized that the district court "is in a far better position than an appellate court to evaluate the prejudice flowing from counsel's improper comments during trial and to determine the most effective response to ensure a fair trial." *Id.* (quoting *Johnson v. Ford Motor Co.*, 988 F.2d 573, 582 (5th Cir. 1993)) (citation omitted).

Ferrellgas contends Plaintiffs' counsel made improper comments in his closing argument that were potentially prejudicial. ECF No. 124 at 17–19. Specifically, Ferrellgas claims Plaintiffs' counsel "improperly appealed to the 'golden rule' and the conscience of the community' in violation of pretrial stipulations." *Id.* at 17.

Plaintiffs respond that Ferrellgas "failed to object during the allegedly improper argument." ECF No. 128 at 13. This failure to contemporaneously object, they argue, precluded the Court from making a "precautionary instruction" that "would have been clearly sufficient to remove whatever slight prejudice might have occurred." *Id.* at 16 (quoting *Reese v. Mercury Marine Div. of Brunswick Corp.*, 793 F.2d 1416, 1429 (5th Cir. 1986)). They assert that Ferrellgas failed to show this was "the exceptional case where the error has seriously affected the fairness, integrity, or public reputation of judicial proceedings" that may warrant a new trial. *Id.* (quoting same). Plaintiffs conclude that, like in *Reese*, "the few isolated remarks" regarding community and conscience in the closing argument do not warrant a new trial. *Id.* (quoting same).

The Court concludes that Plaintiffs' counsel's closing argument did not irreparably prejudice the jury. While certain statements arguably violated the prohibition against invoking the golden rule or community conscience arguments, Ferrellgas failed to object to these arguments during trial. This failure prevented the Court from delivering a cautionary instruction to the jury that would have "remove[d] whatever slight prejudice might have occurred." *Reese*, 793 F.2d at 1429. In any event, the Court concludes any potential prejudice from these statements is not great enough to warrant a new trial.

11

2. <u>The jury charge did not improperly commingle theories.</u>

Ferrellgas next argues the jury charge improperly commingled valid and invalid theories of recovery by including claims for both negligence and products liability. ECF No. 124 at 21. Ferrellgas first reasserts that Plaintiffs proffered no probative evidence showing Ferrellgas's conduct was unreasonable to support their negligence claim. Ferrellgas contends Plaintiffs' "negligence claim fails as a matter of law" because they "adduced no probative evidence that Ferrellgas's conduct was unreasonable." *Id.* Thus, Ferrellgas argues, the jury question on liability improperly commingled a potentially valid theory of recovery (products liability) with an invalid theory (negligence).

Ferrellgas argues that if Plaintiffs' negligence or products liability claim were unviable, "then neither the Court nor the parties could discern whether the jury's apportionment [of fault] . . . [was] based on that failed cause of action." *Id.* at 22. This argument would thus require the Court to conclude that at least one cause of action is unviable. Ferrellgas also argues in a footnote that it properly objected to this jury charge.[4]

Plaintiffs respond that Ferrellgas "failed to preserve its objection to the jury charge" and that "there is nothing improper about the negligence charge as it is written." ECF No. 128 at 18–19. Plaintiffs conclude Ferrellgas's other "arguments on this point merely rehash its Rule 50(b) arguments regarding the sufficiency of the evidence." *Id.* at 19.

For the reasons stated in the analysis of the Motion for JMOL, the Court determines that the jury charge did not improperly commingle invalid theories. As detailed above, Plaintiffs' negligence and products liability claims were both supported by legally sufficient evidence. The Court thus disagrees with Ferrellgas's contention that either of Plaintiffs' causes of action are unviable as a matter of law. Because both causes of action are viable, the jury charge did not improperly

---

[4]"Ferrellgas objected to the submission of each cause of action to the jury because no legally sufficient evidence supported them." ECF No. 124 at n.11. (citation omitted). "Because that invalid theory was then submitted over Ferrellgas's objection, Ferrellgas was not required to object, mere moments later, to the charge." *Id.* (citation omitted).

commingle valid and invalid theories of recovery. The Court therefore rejects this ground for new trial.

3. The jury's apportionment of fault was not contrary to the great weight of the evidence.

Ferrellgas next argues that the jury's apportionment of 93% of fault to Ferrellgas and 7% of fault to Mr. Johnston was contrary to the great weight of the evidence. Ferrellgas contends Mr. Johnston "necessarily misused the propane cylinder in multiple ways." ECF No. 124 at 23. Specifically, Ferrellgas claims "the cylinder valve should not have been turned on, the connection between the regulator and the face seal was dangerously loose, and Mr. Johnston manipulated the cylinder to apply some form of side load." *Id.* (citation omitted). Thus, Ferrellgas argues the jury's allocation of fault was contrary to the great weight of the evidence.

Plaintiffs respond that "not a single witness testified that Mr. Johnston committed . . . any unreasonable actions." ECF No. 128 at 17–18. Plaintiffs stop short of claiming that Mr. Johnston's conduct on the day of the accident was completely without blemish. *See id.* They do, however, argue that multiple experts testified that Mr. Johnston's conduct was "reasonable and foreseeable in light of the circumstances." *Id.* at 17. According to Plaintiffs, the "jury's allocation of [7%] of the fault to Mr. Johnston is actually generous." *Id.* at 18.

Even assuming Ferrellgas properly objected to the jury charge, the Court concludes that the jury's allocation of fault was not extreme enough to be "contrary to the great weight of the evidence." *See Songcharoen v. Plastic & Hand Surgery Assocs., P.L.L.C.*, 561 F. App'x 327, 337 (5th Cir. 2014) (per curiam) (quoting *Carter v. Fenner*, 136 F.3d 1000, 1010 (5th Cir. 1998)). The jury had evidence to support some finding of fault for both Ferrellgas and Mr. Johnston. The jury's partial allocation of fault to both parties suggests that they considered and accounted for the relevant testimony in determining fault. Ferrellgas complains that the allocation is lopsided in favor of Mr. Johnston. But that is not enough to overrule the jury's allocation of liability.

The Court concludes there was sufficient evidence for the jury to weigh as to the relative fault of the parties and the jury's decision was

not contrary to the great weight of that evidence. The Court therefore rejects this final ground for new trial and concludes that the Motion for New Trial is conditionally **DENIED.**

## MOTION FOR REMITTITUR

Lastly, Ferrellgas argues that the jury's award of damages was excessive and that a remittitur of these damages is warranted. The Court agrees and offers Plaintiffs either a remittitur of the damages awarded to Mr. Johnston or a new trial on the issue of damages.

**A. Legal Standard**

The Supreme Court held that state law governs the "review [of] the size of jury verdicts" in diversity cases.[5] *Gasperini*, 518 U.S. at 418, 430–31; *see also Fair v. Allen*, 669 F.3d 601, 604 (5th Cir. 2012) (explaining that *Gasperini* required application of Louisiana's standard for new trial motions). *Longoria v. Hunter Express, Ltd.*, 932 F.3d 360, 364 (5th Cir. 2019)

Texas courts conduct a holistic assessment at both stages of inquiry. *Longoria*, 932 F.3d at 365 (citing *Pope v. Moore*, 711 S.W.2d 622, 624 (Tex. 1986) (explaining that factual sufficiency of the evidence is the "sole remittitur standard")). "Texas [courts'] review for excessiveness uses the same standard as any factual sufficiency claim." *Id.* "The question boils down to whether the evidence introduced at trial would allow a reasonable, fair-minded jury to come to the verdict the actual jury reached." *Id.* (citing *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 159–60 (Tex. 2014)). The jury is afforded strong deference that is overcome only when the jury's damage award is "so factually insufficient or so against the great weight and preponderance of the evidence as to be manifestly unjust." *Id.* (quoting *Pope*, 711 S.W.2d at 624) (citation omitted)).

---

[5]As neither Party mentioned in their briefs the maximum recovery rule—a potentially applicable federal judge-made doctrine—the Court declines to base its analysis on that doctrine. *See, e.g.*, *Longoria v. Hunter Express, Ltd.*, 932 F.3d 360, 364 (5th Cir. 2019). This is especially true because the Court concludes it would reach the same result under either the "more holistic assessment" utilized in Texas state courts or under the maximum recovery rule. *See id.* at 366, n.2 (noting that most cases "do not grapple with the continued use of the maximum recovery rule after *Gasperini* because the parties often do not raise the *Erie* issue").

Generally, there is a "strong presumption in favor of affirming a jury award of damages[,]" but when a court perceives a "verdict is clearly excessive, deference must be abandoned." *Eiland*, 58 F.3d at 183. A verdict is excessive when it is "contrary to right reason" or "entirely disproportionate to the injury sustained." *Id.* (quoting *Caldarera v. Eastern Airlines, Inc.*, 705 F.2d 778, 784 (5th Cir.1983)). "Of course, [courts'] reassessment of damages cannot be supported entirely by rational analysis but involves an inherently subjective component." *Id.* (quoting *Dixon v. Int'l Harvester Co.*, 754 F.2d 573, 590 (5th Cir. 1985)). While pain and suffering are not easily susceptible to monetary quantification, and the jury has broad leeway, "the sky is simply not the limit for jury verdicts, even those that have been once reviewed." *Id.* (quoting *Simeon v. T. Smith & Son, Inc.*, 852 F.2d 1421, 1427 (5th Cir. 1988)).

In this Court's view, $1,700,000 million is the maximum a reasonable jury could properly have awarded here.

### B. The Parties joust on whether remittitur is appropriate.

Ferrellgas claims "the jury's award of $7.5 million is manifestly unjust." ECF No. 124 at 30. Ferrellgas's alternative argument is that the Court should "remit the damages award to a more reasonable sum" because the "damages award is excessive." *Id.* (*citing Adams v. Houston Lighting & Power Co.*, 314 S.W.2d 826, 830 (1958)). In support, Ferrellgas points to a video of Mr. Johnston performing general yardwork at his home while shirtless. This video was presented to the jury at trial. Ferrellgas asserts this "unrebutted video established that Mr. Johnston retains considerable dexterity, performing physical tasks such as reaching, bending, lifting, gripping, and turning without limitation or indication of discomfort." *Id.* Ferrellgas also brings the Court's attention to "Mr. Johnston's own burn physician, Dr. Culnan," who testified he "wouldn't anticipate any burn-related aspects preventing him from achieving full-normal activities of daily life or gardening." *Id.* (citation omitted).

Plaintiffs, of course, claim the jury's award was not unreasonable and matched Mr. Johnston's injuries. ECF No. 128 at 21–23. They detail Mr. Johnston's initial accident, treatment, and recovery. *See id.* Plaintiffs

15

also argue that their expert, Dr. Dhanyamraju, testified that Mr. Johnston's nerve injuries are unlikely to ever heal fully, as he still experienced symptoms after 18 months from the initial injury. *Id.* (citations omitted). Mr. Johnston remained on medication to control his pain, which has been increased in dosage twice. *Id.* at 23 (citation omitted). Plaintiffs also argue that Mr. Johnston has trouble driving due to occasional panic attacks triggered by traffic lights. *Id.* at 24. They also claim he avoids physical contact with others and that his friends must ensure their "dogs do not jump on him" due to the pain in his hands. *Id.* Plaintiffs assert these factors support the jury's award.

In its Reply, Ferrellgas focuses on two subsets of damages that it claims Plaintiffs failed to address in their Response. ECF No. 130 at 10. Specifically, Ferrellgas claims Plaintiffs failed to address its arguments that "refuted the jury's future physical impairment and disfigurement awards." *Id.* The Reply redirects the Court to the video shown to the jury that showed "Mr. Johnston retained the ability to perform physical tasks (e.g., tree trimming) that require considerable flexibility and dexterity[.]" *Id.* (citation omitted). Ferrellgas also points to expert testimony stating Mr. Johnston "wouldn't anticipate any burn-related aspects preventing him from achieving full-normal activities." *Id.* (citation omitted). Finally, Ferrellgas argues that "'recent photographs of Mr. Johnston's arms, hands, and abdomen,' expert testimony showed that Mr. Johnston 'made an excellent recovery'; there was no 'substantial scarring residual on any of those photos.'" *Id.* (citation omitted). Ferrellgas thus reasserts that "remittitur is appropriate for the jury's awards of impairment and disfigurement damages." *Id.*

### C. The jury award was excessive, and remittitur is appropriate.

As stated above, the Court concludes the jury's award of damages is excessive; either remittitur or a new trial on damages is needed.[6] Ferrellgas's argument for remittitur is terse, and its briefing is less than helpful. *See* ECF No. 124 at 24. Plaintiffs directed the Court to an opinion authored by the undersigned (during his time as a state

---

[6]Defendant's motion for remittitur does not specifically challenge the damages awarded to Mrs. Johnston, so the Court will limit its analysis to the damages awarded to Mr. Johnston.

16

appellate judge) upholding a jury award for burn injuries. *See* ECF No. 128 (citing *Emerson Elec. Co. v. Johnson*, 601 S.W.3d 813, 823 (Tex. App.—Fort Worth 2018, pet. granted) (Pittman, J.), *aff'd*, 627 S.W.3d 197 (Tex. 2021)). The Court, however, finds that case unpersuasive and distinguishable given the disparate facts presented here. In *Emerson*, the plaintiff was a technician who was servicing an electrical terminal when its compressor sprayed out "scalding hot refrigerant and oil[.]" *Id.* at 822. The "oil and refrigerant mix ignited and covered [the plaintiff] in flames," and he "suffered second- and third-degree *burns on over sixty percent of his body*." *Id.* (emphasis added). After that incident, he endured a months-long hospital stay. *Id.* at 844. Given the dreadful nature of these burns, the jury awarded the technician more than $14,000,000 in damages, which the court upheld. Plaintiffs attempt to make up for the discrepancy in injuries in the cases by noting Mr. Johnston has potentially permanent nerve damage. This, however, cannot bridge the factual gap between the injuries involved and damages awarded in the two cases. ECF No. 128 at 24–25. Being uniquely familiar with *Emerson,* the Court find it to be an ultimately unpersuasive to guide the appropriate damages in this case.

The Court conducted an independent survey of published Texas state-court decisions and encountered a more instructive case. *See Int'l Harvester Co. v. Zavala* 623 S.W.2d 699, 701 (Tex. Civ. App.—Houston [1st] 1981, writ ref'd n.r.e.). In *Zavala*, liquefied petroleum gases escaped from a fuel tank through a pressure relief valve and ignited, severely burning the plaintiff. *Id.* That plaintiff suffered far more severe burns from a leaking valve like the one that caused Mr. Johnston's injuries here, but that plaintiff received far less damages. *See id.* at 709. At the time of the accident, that plaintiff had "practically all of his clothes burned off and his skin hanging down." *Id.* He was "placed in the intensive care unit reserved for patients whose lives are in danger[.]" *Id.* There, an expert testified the plaintiff suffered second- and third- degree burns to his face, neck, arms, hands, and back, covering 42% of his total body surface. *Id.* During his several-month hospital stay, he had almost daily debridement (removal) of the burned skin with scissors, forceps, and pliers without anesthetic. *Id.* After the debridement process, he had

17

four skin graft operations. *Id.* The burns on his hands and arms were gruesome and required many more surgeries. *Id.* He underwent two surgeries to remove the heavy scar tissue between his fingers on both hands, where his flesh had melted and fused together. *Id.* He had a similar operation on his right arm. *Id.* Despite the terrible severity of these burns and operations, the jury awarded the plaintiff $605,000, which the court upheld as well supported by the evidence. *Id.* This figure, adjusted for inflation, is approximately $1,840,000. [7]

When determining the excessiveness of a jury verdict, courts "must review each case on its own facts." *Moore v. M/V ANGELA*, 353 F.3d 376, 384 (5th Cir. 2003) (citing *Winbourne v. E. Airlines, Inc.*, 758 F.2d 1016, 1018 (5th Cir. 1984)). The Court acknowledges that Mr. Johnston suffered significant burns and injuries. But the jury's award of $7,000,000 in damages is "contrary to the overwhelming weight of the evidence." *See Longoria v. Hunter Express, Ltd.*, 932 F.3d 360, 366 (5th Cir. 2019) (quoting *Cresthaven Nursing Residence v. Freeman*, 134 S.W.3d 214, 228 (Tex. App.—Amarillo 2003, no pet.)). In this situation, such a large award cannot be said to "fairly and reasonably compensate" Mr. Johnston. *Id.* (quoting *Saenz v. Fid. & Guar. Ins. Underwriters*, 925 S.W.2d 607, 614 (Tex. 1996)). Although damages of this nature are "necessarily imprecise, the jury 'cannot simply pick a number and put it in the blank.'" *Id.* (quoting same). It appears the jury here did just that. *See id.*

The Court has the utmost respect for juries' decision-making process, which is central to a thriving democracy. It is no small decision for the Court to modify the jury's decision on damages. But when the amount of damages conjured by the jury is seemingly disconnected from the evidence, the Court is duty-bound to intervene.

The Court concludes that a remittitur is necessary. Based on damages awarded in factually analogous, published decisions, the Court remits the $7,000,000 awarded to Mr. Johnston to $1,700,000. The

---

[7]The Court calculated this figure using the CPI Inflation Calculator from the Bureau of Labor Statistics, available at https://data.bls.gov/cgi-bin/cpicalc.pl. The Court used the date of the *Zavala* opinion as a starting date and accounted for inflation up to the time of the jury's award in this case—December 2021.

18

Court, however, offers Plaintiffs the choice of whether to accept the remitted amount or to proceed with a new trial on the issue of damages.[8]

## ORDER

For the reasons stated above, the Court **DENIES** the Motion for JMOL.

The Court **conditionally DENIES** the Motion for New Trial and **GRANTS** to Motion for Remittitur. The denial of the Motion for New Trial is conditioned on Plaintiffs' acceptance of the Court's remittitur of damages awarded to Mr. Johnston from $7,000,000 to $1,700,000.

The Court accordingly **ORDERS** Plaintiffs to state in writing whether they accept this remittitur within **10 days** of the date of this Order. If Plaintiffs timely agree to and accept the remitted damages, the Motion for New Trial will be denied without condition. If Plaintiffs fail to accept the Court's remittitur by action or inaction, the Court will grant Ferrellgas's Motion for New Trial based on its objection that the jury's award was excessive as a matter of law.

**SO ORDERED** on this **19th day** of **August 2022.**

*Mark T. Pittman*
Mark T. Pittman
UNITED STATES DISTRICT JUDGE

---

[8]The Court implements a longstanding practice of conditioning its "denial of the motion for a new trial upon the filing by the plaintiff of a remittitur in a stated amount." *See* 11 Charles Alan Wright et al., FED. PRAC. & PROC. § 2815 (3d ed.). This gives Plaintiffs the option of "either submitting to a new trial or of accepting the amount of damages that the [C]ourt considers justified." *Id.*